CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
EASTWIND MARITIME INC.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EASTWIND MARITIME INC.,

                Plaintiff,

    v.

SARL STAR FRUITS IMPORT-EXPORT,

                Defendant.
------------------------------------------------------------X

07 cv _____ (___)

**VERIFIED COMPLAINT**

*[RECEIVED DEC 12 2007 U.S.D.C. S.D.N.Y. CASHIERS stamp]*

Plaintiff EASTWIND MARITIME INC., (hereinafter "EASTWIND") by its attorneys, as and for its Verified Complaint against the Defendant, SARL STAR FRUITS IMPORT-EXPORT, (hereinafter "STAR FRUIT"), alleges upon information and belief as follows:

### JURISDICTION

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

### THE PARTIES

2.    At all times material hereto, Plaintiff EASTWIND was and still is a business entity duly organized and existing pursuant to the laws of the United States with

an office and principal place of business at 444 Madison Avenue, Suite 200, New York, New York, 10022.

3. At all material times hereto, the plaintiff was a member of the Eastwind Group, which includes a number of subsidiaries and affiliates that are in the business of providing shipping management services, commercial ship management, technical and operational ship management, vessel ownership and related services pertaining to the operation and management of ocean going vessels.

4. At all material times hereto, the plaintiff was the disponent Owner of the ocean going vessel known as the M/V ELBRUS.

5. At all material times hereto, the ocean going vessel known as the M/V EW JACKSON was owned and operated by a company associated with the plaintiff, EASTWIND.

6. At all times material hereto, Defendant STAR FRUIT, was and still is a foreign business entity duly organized and existing pursuant to the laws of foreign country with an office and principal place of business at 32 rue de Freres Bouza, Boufarnik, Algeria.

THE PLAINTIFF AND DEFENDANT<br>ARE PARTIES TO A MARITIME CONTRACT

7. On August 14, 2007, EASTWIND, as owner of the ocean going vessel M/V ELBRUS, entered into a charter party contract with TETHYS TRADING, (hereinafter "TETHYS"), as charterer, whereby TETHYS chartered the M/V ELBRUS to perform a voyage, and carry a cargo of bananas from Ecuador to Algiers for delivery to defendant STAR FRUIT, in Algeria in exchange for the payment of freight.

8. Upon information and belief, TETHYS is a subsidiary of defendant STAR FRUIT

9. The M/V ELBRUS loaded the cargo of bananas in Guayaquil, Ecuador on or about September 17, 2007, bills of lading for the cargo were issued, the vessel sailed for Algiers with the cargo on board and the vessel arrived in Algiers on October 3, 2007.

10. The cargo of bananas that was carried on board the M/V ELBRUS had been sold by Liftex S.A. to defendant, STAR FRUIT, pursuant to a contract concluded on August 14, 2007.

11. During the voyage from Guayaquil to Algiers, a dispute arose between Liftex S.A. and STAR FRUIT regarding payment of the purchase price for the cargo.

12. During the course of the dispute between Liftex S.A. and STAR FRUIT, Panamanian attorneys representing the seller of the cargo, i.e. Liftex S.A., contacted EASTWIND and, those Panamanian attorneys claimed that STAR FRUIT had not fully paid for the cargo, that STAR FRUIT was not the owner of the cargo and, furthermore, STAR FRUIT did not possess the original bills of lading for the cargo on board the M/V ELBRUS.

13. The Panamanian attorneys representing Liftex S.A. requested of EASTWIND that the cargo on board the M/V ELBRUS should not be discharged and delivered to defendant, STAR FRUIT, without presentation of the original bills of lading that had been issued when the cargo was shipped on board the M/V ELBRUS.

14. When the M/V ELBRUS arrived in Algeria, the defendant STAR FRUIT acknowledged that the shipper, Liftex S.A., was asserting a claim that it had not been paid for the cargo, but the defendant STAR FRUIT requested that EASTWIND discharge

3

and deliver all of the cargo on board the vessel in Algiers with the production of the original bills of lading.

15. With due regard to the fact that the cargo of bananas was a perishable commodity that could not remain on board the vessel indefinitely, EASTWIND requested and received a Letter of Undertaking from defendant STAR FRUIT to facilitate the discharge of the cargo even though defendant STAR FRUIT was unable to present the original bills of lading.

16. It is common in the maritime industry for the ocean carrier of cargo to make delivery of the cargo at the designated discharge port in exchange for a Letter of Undertaking in situations where the designated receiver of the cargo is not in immediate possession of the original bills of lading.

17. In exchange for the delivery of the cargo of bananas, the defendant STAR FRUIT did provide EASTWIND with a Letter of Undertaking.

18. In the Letter of Undertaking (hereinafter "LOU"), STAR FRUIT specifically agreed to:

> "To indemnify you [EASTWIND] and to hold you [EASTWIND], your servants and agents and to hold all of you harmless in respect to any liability, loss, damage or expenses of whatsoever nature which you [EASTWIND] may sustain by reason of delivering the cargo in accordance with our [STAR FRUIT} request.
>
> In the event of any proceedings being commenced against you {EASTWIND} or any your servants or agents in connection with the delivery of the cargo as aforesaid to provide you [EASTWIND] or them on demand with sufficient funds to defend same.
>
> If the vessel [M/V ELBRUS] or property in the same or associated ownership should be arrested or detained or if the arrest or detention

4

thereof should be threatened by Liftex S.A. or any other party connected in any way with the above mentioned cargo loaded on ELBRUS, to forthwith provide such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property and to forthwith to indemnify you in respect of any loss, damage or expenses caused by such arrest or detention whether or not the same be justified."

19. The LOU provided by defendant STAR FRUIT is governed by English law, and it also provided that with respect to any disputes arising under the LOU every person liable under the LOU will submit to the jurisdiction of the High Court of Justice in England.

20. The LOU that was presented by STAR FRUIT to EASTWIND in exchange for the release of the cargo of perishable bananas was, and is, related to commerce on navigable waters and the transportation of cargo by sea, consequently, the LOU is a maritime contract. *See e.g.,* Deval Denizcilnik VE Tigaret A.S. v. Agenzia Tripcovich S.R.L., 513 F.Supp.2d 6 (S.D.N.Y. 2007).

## THE DEFENDANT BREACHED THE MARITIME CONTRACT

21. On or about December 1, 2007, LIFTEX S.A. arrested the vessel M/V EW JACKSON in Panama.

22. In the complaint that was filed to obtain the arrest of the M/V EW JACKSON, Liftex S.A. alleged that the cargo of bananas carried on board the M/V ELBRUS was wrongfully discharged and delivered to the defendant STAR FRUIT in Algeria, that the M/V EW JACKSON was vessel or property in the same or associated

ownership of the M/V ELBRUS and that the arrest was necessary for Liftex S.A. to obtain security for its claim against the M/V ELBRUS and her owner for wrongful delivery of cargo.

23. To secure release of the M/V EW JACKSON, EASTWIND posted a Letter of Undertaking in the amount of US$730,000.00 to secure the claims made by Liftex S.A.

24. Once the Letter of Undertaking was provided to Liftex S.A. and Liftex S.A. had security for its claims against the M/V ELBRUS and her owner, the M/V EW JACKSON was released from arrest in Panama.

25 On December 4, 2007, EASTWIND's London solicitors issued a demand to STAR FRUIT pursuant to the LOU requesting defendant STAR FRUIT to provide cash or a bank guarantee for the sum of US$730,000.00 which would stand as security in Panama in place of the security provided by EASTWIND to secure release of the M/V EW JACKSON.

26. On December 4, 2007, EASTWIND's London solicitors also demanded that defendant STAR FRUIT provide EASTWIND with funds sufficient to defend the claims being presented by Liftex S.A. in Panama.

27. On December 9, 2007, STAR FRUIT responded to EASTWIND's London solicitors, advising that STAR FRUIT would not provide security nor would STAR FRUIT pay EASTWIND for the costs it has and will incur to defend the claim asserted by Liftex S.A.

## AS AND FOR A CAUSE OF ACTION
## AGAINST STAR FRUIT FOR BREACH OF MARITIME CONTRACT

28. In breach of its obligations under the Letter of Undertaking, STAR FRUIT failed to post security following the arrest of the M/V EW JACKSON, and it has failed to pay funds to EASTWIND to defend the claims being asserted by Liftex S.A.

29. By reason of STAR FRUIT's breaches of it obligations pursuant to the LOU, EASTWIND has served notice on STAR FRUIT that EASTWIND will avail itself of all of its legal and contractual remedies including, but not limited to, initiation of an action in the High Court of Justice in London.

30. EASTWIND's London solicitors are in the process of preparing to initiate an action to be filed in the High Court of Justice in England against the defendant, STAR FRUIT.

31. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in litigation pursuant to English law.

32. As best as can now be estimated, the Plaintiff EASTWIND expects to recover the following amounts from STAR FRUIT in the High Court of Justice in London:

| | | |
|---|---|---:|
| A. | Funds to replace the security already posted for the claims asserted by Liftex S.A in Panama: | $ 730,000.00 |
| B. | Costs to defend the claim of Liftex S.A. in Panama: | $ 100,000.00 |
| C. | Estimated attorneys' fees to be incurred in the London action against defendant STAR FRUIT: | $ 100,000.00 |
| D. | Estimated litigation costs/expenses to be incurred in London for the action against defendant STAR FRUIT: | $ 70,000.00 |

7

| | |
|---|---|
| **Total** | **$1,000,000.00** |

## PRAYER FOR RELIEF

33. Notwithstanding the fact that the in *personam liability* of the Defendant to the claims of plaintiff EASTWIND is subject to determination by the High Court of Justice in England, there are now, or will be during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the Defendant within this District and held by various parties, as garnishees.

34. Plaintiff EASTWIND believes that some of these assets, *to wit*: bank accounts; payments of freight and/or hire from the shippers of the cargoes on board the M/V ELBRUS and/or other cargoes on other vessels chartered by defendant; freight and/or hire payments being made to other vessel owners for vessels chartered by defendant; Clearing House Interbank Payment System (CHIPS) credits; and/or miscellaneous funds and payments are being electronically transferred ("EFTs") through intermediary banks located in this District in the possession of garnishees, namely banks or financial institutions located in New York.

35. As set forth in the accompanying affidavit of Owen F. Duffy, the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

36. Because this Verified Complaint sets forth an *in personam* maritime claim against the Defendant and because the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B attachment and garnishment are met and Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the Defendant and/or *quasi in rem* jurisdiction over the property of the Defendant, in the event that the Defendant challenges the jurisdiction of the High Court of Justice in England and/or so that an eventual judgment and/or award can be satisfied.

WHEREFORE, Plaintiff prays as follows:

A. That the Defendant be summoned to appear and answer this Verified Complaint;

B. That the Defendant not being found within this District, as set forth in the Affidavit of Owen F. Duffy, then all of its assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like, whether tangible or intangible, belonging to or claimed by the Defendant within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and to pay Plaintiff's damages;

C. That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the High Court of Justice of England, so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, *i.e.* US $1,000,000.00, and that a judgment of condemnation and sale be entered against the property arrested and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D.  That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
December 11, 2007

                                        CHALOS, O'CONNOR & DUFFY, LLP
                                        Attorneys for Plaintiff,
                                        EASTWIND TRANSPORTATION LTD.

By:     _____
                                        Owen F. Duffy (OD-3144)
                                        George E. Murray (GM-4172)
                                        366 Main Street
                                        Port Washington, New York 11050
                                        Tel:  (516) 767-3600
                                        Fax:  (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
EASTWIND MARITIME INC.
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EASTWIND MARITIME INC.,

              Plaintiff,

    v.

SARL STAR FRUITS IMPORT-EXPORT,

              Defendant.
-----------------------------------------------------------X

07 CV _____ (___)

**VERIFICATION**

STATE OF NEW YORK   :
                         : ss.
COUNTY OF NASSAU   :

    BEFORE ME, the undersigned authority, personally came and appeared Owen F. Duffy who, after being duly sworn, did depose and state:

    1.    That he is a partner in the law firm of Chalos, O'Connor & Duffy LLP, counsel for the Plaintiff, EASTWIND MARITIME INC., herein;

    2.    That he has read the foregoing complaint and knows the contents thereof;

    3.    That he believes the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys; and

4. That the reason that this verification was made by deponent and not by the Plaintiff is because verification by Plaintiff's officers could not be obtained within the time constraints presented by the circumstances of this case.

Dated: Port Washington, New York
December 12, 2007

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
EASTWIND MARITIME INC.

By: _____
Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600
Fax: (516) 767-3605

Subscribed and sworn to before me this
December 12, 2007

_____
Notary Public, State of New York

GEORGE E. MURRAY
Notary Public, State of New York
No. 02MU6108120
Qualified in New York County
Commission Expires April 12, 2008

2